UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
UNITED STATES OF AMERICA,

   -v-

SALVADOR URIBE-JIMENEZ,

              Defendant.

------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:12-cr-00603-FB

**BLOCK, Senior District Judge:**

Salvador Uribe-Jimenez ("Defendant") is currently serving a sentence of 20 years' imprisonment for his participation in a conspiracy to import narcotics into the United States and to money launder narcotics trafficking proceeds. Those convictions were affirmed on appeal. Defendant now moves to vacate his sentence pursuant to 28 U.S.C. § 2255.[1] For the following reasons, Defendant's motion is denied.

**I.**

The Court assumes familiarity with the record in Defendant's criminal case and recites only those portions of the record pertinent to the motion before it.

---

[1] Defendant was sentenced by Judge Dearie. Upon Defendant's motion to vacate, his case was reassigned to this Court.

**DRAFT**

1   Defendant smuggled cocaine, marijuana, and heroin across the U.S.-Mexican border by concealing the narcotics in tractor-trailer trucks operated by associates of the Mexican drug cartels. Defendant additionally shipped marijuana across the border by concealing it in pottery products. The drugs were delivered to the New York City area, where they were offloaded and sold. Defendant and his co-conspirators then laundered the money, in part by sending it back to Mexico.

In early 2008, DEA agents seized one of Defendant's drug shipments in the Bronx, New York. Consequently, the agents arrested Defendant at a stash house in New Jersey on February 26, 2008. After his arrest, Defendant was charged with illegal reentry but not drug trafficking. He was convicted and sentenced to 46 months in federal custody. He was deported back to Mexico on July 8, 2011, after the completion of his sentence.

Outside of the United States, Defendant continued to traffic narcotics. He was eventually arrested in Colombia, on March 14, 2015, and extradited to the United States on November 12, 2015. He ultimately pled guilty to four counts: (i) conspiracy to import more than five kilograms of cocaine between May 1, 2012 and March 15, 2015 (Count One); (ii) conspiracy to import more than one kilogram of heroin, more than five kilograms of cocaine, and more than one-thousand kilograms of marijuana between January 1, 2007 and February 26, 2008 (Count Two); (iii)

DRAFT

conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin, more than five kilograms of cocaine, and more than one-thousand kilograms of marijuana between January 1, 2007 and February 26, 2008 (Count Three); and (iv) conspiracy to launder the proceeds of narcotics, between January 1, 2007 and February 26, 2008 (Count Four).

At sentencing, Defendant's offense level was assessed as 36 with a Criminal History Category ("CHC") of IV.[2] The applicable Guideline range was 262-327 months' incarceration. The court ultimately sentenced Defendant to 240 months on each count to run concurrently. Defendant timely appealed his sentence on the basis that his motion to withdraw his plea had been improperly denied. The Second Circuit denied his appeal on October 15, 2019, *United States v. Uribe-Jimenez*, 790 F. Appx 242 (2d Cir. 2019), and his sentence became final 90 days later on January 13, 2020. *See Clay v. United States*, 537 U.S. 522, 525 (2003).

---

[2] Both Defendant and the Government state that the sentencing court determined that Defendant's offense level was 34. Having closely read the transcript of the sentencing proceeding and the Statement of Reasons provided after judgment, the Court finds that Defendant was sentenced at offense level 36, CHC IV. Tr. of Criminal Cause for Sentencing at 3:11-23, ECF 74 ("[I]t's an offense level of 36 and a Criminal History Category of IV."); Statement of Reasons at 1 (specifying that Court determined Guideline range with offense level 36 and CHC IV with a Guideline range of 262-327 months).

DRAFT

## II.

Defendant raises two arguments in his motion.[3]

First, Defendant argues that the Court improperly sentenced him by relying on his prior conviction for illegal reentry to calculate his CHC.[4] According to Defendant, his illegal reentry was based on the same underlying conduct as his conviction for Count Two, conspiracy to import narcotics between January 1, 2007 and February 26, 2008. Resultantly, his CHC should have been III instead of IV, and he should have received time served for the 46 months he served under the illegal reentry conviction. In its opposition, the Government argues that the illegal reentry was a "prior sentence" under the Sentencing Guidelines because it was "conduct not part of the instant offense," United States Sentencing Guidelines ("U.S.S.G.") § 4A1.2(a)(1), and was therefore properly considered in calculating Defendant's CHC.

Second, Defendant argues that the illegal reentry was the same crime as his drug convictions because it happened at the same time, and that Defendant was

---

[3] Because Defendant did not raise his claims in his direct appeal, they are procedurally defaulted. To resolve the merits of Defendant's arguments, the Court considers them brought on grounds of ineffective assistance.

[4] In reviewing Defendant's *pro se* motion, the Court liberally construes the pleading and applies the "less stringent" standard appropriate for drafting done by non-lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**DRAFT**

thereby prosecuted in violation of the Double Jeopardy Clause. The Government responds that committing different crimes during overlapping time periods does not turn those separate offenses into the same crime.

### i. Whether Defendant was Improperly Sentenced

Sentencing errors are not cognizable in a § 2255 motion absent a "complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996); *see also United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018). Indeed, the Supreme Court has explained that a sentencing error will only be cognizable on a Section 2255 motion to vacate where the "error of fact or law [is] of the 'fundamental' character that renders the entire proceeding irregular and invalid." *See Hoskins*, 905 F.3d at 103 (quoting *United States v. Addonizio*, 442 U.S. 178, 186 (1979)). A defendant will be hard-pressed to prove that their sentencing error meets this high bar where their actual sentence still fell within their correct Sentencing Guideline range because "within-Guidelines sentences will rarely be unreasonable." *See Hoskins*, 905 F.3d at 104-05.

Here Defendant argues that his CHC was erroneously calculated because it improperly relied on his prior conviction for illegal reentry. A defendant's CHC is based on, among other things, his prior sentences. *See* U.S.S.G. § 4A1.1; *see also United States v. Bryant*, 356 F. Supp. 3d 216, 219 (D. Conn. 2018). The term "prior

**DRAFT**

sentence" means "any sentence previously imposed . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2 Application Note 1. Under § 1B1.3, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a); *see also United States v. Thomas*, 54 F.3d 73, 83 (2d Cir. 1995). "Thus, a sentence imposed for conduct that was part of the same course of conduct as the offense of conviction is not a 'prior sentence' within the meaning of Section 4A1.1." *United States v. Brennan*, 395 F.3d 59, 70 (2d Cir. 2005).

In the Second Circuit, "[a]cts may be found to be part of the 'same course of conduct' if the defendant engaged in a repeated pattern of similar criminal acts, even if they were not performed pursuant to a single scheme or plan." *Bryant*, 356 F. Supp. 3d at 220 (quoting *Thomas*, 54 F.3d at 84). Accordingly, the Second Circuit has found that a prior conviction of bankruptcy fraud was relevant conduct to a conviction for criminal contempt based on a Defendant's violation of a freeze order on his assets, as they both involved the same "repeated pattern of similar criminal

DRAFT

acts"—*i.e.*, "concealing, laundering, investing, and using of [the defendant's] assets for [their] own purposes without the knowledge or consent of the bankruptcy estate or [their] judgment creditors." *Brennan*, 395 F.3d at 70. Likewise, in *Thomas*, the Second Circuit noted that prior convictions for possessing property using forged money orders was relevant conduct to defendants' convictions for the underlying forgery, and should therefore not be considered as prior sentences under the Guidelines. *See Thomas*, 54 F.3d at 83.

The Second Circuit has yet to address whether a defendant's prior crime of illegal reentry, committed in the course of and in furtherance of a conspiracy to import narcotics, is relevant conduct to the narcotics trafficking conviction. Other Circuits that have addressed similar circumstances have generally found that illegal entry is "too attenuated" to serve as relevant conduct for a subsequent offense, even where the illegal entry was a prerequisite to the underlying crime. *United States v. Yerena-Magana*, 478 F.3d 683, 689 (5th Cir. 2007) (holding that, even if defendant presented evidence "that he illegally entered this country in preparation for the drug offense . . . the nexus between the illegal entry [] and the drug offense [] is too attenuated to constitute [relevant conduct under the Sentencing Guidelines])" (cleaned up); *see also United States v. Sanchez*, 814 F.3d 844, 851 (7th Cir. 2016) (declining to find that illegal reentry offense was relevant conduct to drug possession

7

**DRAFT**

with intent to distribute because "there are no similar victims; the offenses involve two distinct acts; and the offenses themselves are quite dissimilar"); *cf. United States v. Rivera-Gomez*, 634 F.3d 507, 515 (9th Cir. 2011) (reversing finding that prior resisting arrest conviction could not be relevant conduct for illegal reentry conviction as a matter of law on the basis that, if it was done to avoid reentry, it could be relevant conduct to the reentry conviction).

Here, the Court cannot resolve this question without an evidentiary hearing to determine the exact circumstances of Defendant's illegal reentry and the degree to which it overlapped with his importation of narcotics. It is at least possible from the record and the parties' submissions that Defendant illegally entered the United States as a part of his plan to import narcotics into the country.

The Court need not reach this question, however, because even if Defendant's argument is successful, it would not justify granting him relief under § 2255 for a complete miscarriage of justice.[5] At sentencing, Defendant had an offense level of 36 with a CHC of IV, with a Guideline range of 262-327 months. Were his arguments fully credited and his CHC dropped to III pursuant to U.S.S.G. § 4A1.1(b), he would still have had a Guideline range of 235-293 months, of which

---

[5] Neither does the Court need to address Defendant's argument that he should receive time served for his illegal reentry conviction, as he was not subject to an undischarged sentence under U.S.S.G. 5G1.3.

**DRAFT**

his actual sentence was comfortably at the bottom of that range with 240 months. *Hoskins*, 905 F.3d at 104 ("within-Guidelines sentences will rarely be unreasonable").

In addition, the range provided by the Sentencing Guidelines was advisory, not mandatory. *Id.* at 104. The sentencing judge was obligated to make an individualized assessment of the sentence that best served the purposes identified in 18 U.S.C. § 3553(a), including the obligation to impose sentences "sufficient, but not greater than necessary" to satisfy its stated sentencing purposes." *Id.* at 103 (quoting 18 U.S.C. § 3553(a)) (citations omitted). In the context of this analysis, the advisory nature of the Guideline characterization alone is an additional factor that weighs against Defendant's ability to prove that his alleged sentencing error was a complete miscarriage of justice. *See id.* at 104 n. 7 (finding that advisory nature of challenged sentencing determination was "one factor, among others, that preclude [defendant] from showing that his below Guidelines [] sentence is a complete miscarriage of justice").

In sum, because Defendant's arguments, if credited, do not establish that his sentencing amounted to a complete miscarriage of justice, his request for relief on this basis is denied.

DRAFT

### ii. Whether Defendant was Convicted in Double Jeopardy

Defendant's argument that his prior conviction for illegal reentry violated the Double Jeopardy Clause is similarly without merit. Separate offenses do not amount to double jeopardy if "each offense contains an element not contained in the other." *United States v. Weingarten*, 713 F.3d 704, 708 (2d Cir. 2013) (discussing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Under 8 U.S.C. § 1326, an element of Illegal Reentry is that the defendant is an alien, which is not an element in any of Defendant's underlying crimes. Likewise, the elements of Defendant's underlying crimes for drug trafficking and money laundering contain elements that are not within the Illegal Reentry criminal statute.

### III. CONCLUSION

For the foregoing reasons, Defendant's § 2255 motion is denied. Defendant's alleged sentencing error does not amount to a complete miscarriage of justice and his double jeopardy claim is without merit. Because the motion does not make a substantial showing of the denial of a federal constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c).

DRAFT

**SO ORDERED.**

          /S/ Frederic Block_____
         FREDERIC BLOCK
         Senior United States District Judge

Brooklyn, New York
October 10, 2023